UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JONATHAN BROOKS,

    Defendant.

_____/

Case No. 20-20515

HON. MARK A. GOLDSMITH

**OPINION & ORDER
OVERRULING DEFENDANT'S SECOND AND THIRD OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT**

Defendant Jonathan Brooks pleaded guilty to conspiring to steal mail matter, in violation of 18 U.S.C. § 371. Rule 11 Plea Agreement (Dkt. 48). He is now awaiting sentencing. This matter is before the Court on Brooks's second and third objections to the presentence investigation report (PSR) prepared by the probation department. See PSR Addendum at A-1–A-3 (Dkt. 73).[1] Brooks filed sentencing memoranda addressing his objections (Dkts. 96, 106). The Government also filed a sentencing memorandum (Dkt. 105). For the reasons that follow, the Court overrules Brooks's second and third objections.

**I. BACKGROUND**

The offense occurred during the time when Brooks and his co-defendants, Jordyn Merriewether and Alexandra Thomas, worked as letter carriers for the United States Postal Service. PSR ¶ 7 (Dkt. 73). Co-defendant Andre Taylor, who did not work for the Postal Service,

---

[1] Brooks launches three additional objections to the PSR, which the Court will resolve at sentencing. In his fourth and fifth objections, Brooks contends that if his offense level is recalculated, then the "applicable Guideline Range is in Zone B," and he "is eligible for probation." PSR Addendum at A-3. Brooks's first objection has no impact on the applicable guidelines range. In that objection, he contends that the probation office incorrectly included "Jonathon Dion Brooks" and "Jonathon Brooks" in his list of aliases.

approached Brooks, Merriewether, and Thomas around the winter of 2019–2020 and offered to pay them if they would steal credit or debit cards from the mail and provide them to Taylor. Id. ¶¶ 13–14. Taylor paid the letter carriers approximately $75–100 per stolen credit card. Id. ¶ 15. In addition to stealing mail, Brooks provided Taylor with a stolen "arrow key," which is a universal key used to access collection boxes, outdoor parcel lockers, cluster box units, and apartment panels. Id. ¶ 17. Brooks also advised Taylor of specific locations where the arrow key could be used. Id.

Taylor used postal customers' personal identifiable information—such as names and dates of birth—to submit numerous fraudulent state unemployment insurance applications to the Michigan Unemployment Insurance Agency and other state labor authorities. Id. ¶ 15. The Government estimates that Brooks facilitated a loss to more than ten victims totaling $63,720; Merriewether facilitated a loss of $22,040 and Thomas facilitated a loss of $28,800. Id. ¶¶ 18–19.

## II. ANALYSIS

Because Brooks was a letter carrier when he committed the instant offense, the probation office recommends adding 2 points to his offense level for "abuse of trust," pursuant to U.S.S.G. § 3B1.3, Application Note 2(A). Id. ¶ 29. Brooks's second objection challenges this 2-point increase. PSR Addendum at A-1. He argues that the Court should find that (i) Application Note 2(A) is non-binding and (ii) the abuse-of-trust adjustment should not be applied to Brooks merely because he was a mail carrier. Def. 1st Mem. at 6–9 (Dkt. 96). In his third objection, Brooks objects to the probation office's calculation of his offense level on the grounds that it does not include a 4-point decrease for Brooks having played a "mitigating role," pursuant to U.S.S.G. § 3B1.2. PSR Addendum at A-2. The Court addresses Brooks's second and third objections in turn.

### A. Abuse of Trust

Section 3B1.3 instructs that a defendant's offense level should be increased by 2 points "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense[.]" Application Note 1 defines "a position of public or private trust" as follows:

> [A] position of public or private trust [is] characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). . . .

Application Note 3 further expands the definition of a position of trust:

> This adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not. . . .

The focus of Brooks's objection is Application Note 2(A). Pursuant to this application note, "[n]otwithstanding Application Note 1, or any other provision of this guideline," the 2-point increase for abuse of trust "shall" apply to "[a]n employee of the United States Postal Service who engages in the theft or destruction of undelivered United States mail."

Commentary (including application notes) are "binding when the guideline which the commentary interprets will bear the construction." United States v. De Leon, 810 F. App'x. 384, 386 (6th Cir. 2020) (punctuation modified). Because application notes in commentary to a guideline "may only interpret the guideline," an application note has no force if it goes beyond mere interpretation and creates a new "substantive rule." United States v. Riccardi, 989 F.3d 476, 483–484 (6th Cir. 2021). Generally, an application note that explains an undefined term in the guideline "conforms to the permissible Commentary interpretation of the Guideline." De Leon, 810 F. App'x at 386. Conversely, if an application note "modifie[s] a Guideline by expanding an existing definition," then courts are not bound to follow it. Id. For instance, in United States v.

3

Havis, 927 F.3d 382 (6th Cir. 2019), Application Note 1 to § 4B1.2, which adds attempt crimes to the list of controlled substance offenses under § 4B1.2(b), was not binding on courts because it plainly expands the definition of controlled substance offenses rather than interprets it. Id. at 386.

Riccardi, relied on by Brooks, is also illustrative. That case involved Application Note 3(F)(i) to § 2B1.1. Section 2B1.1 sets forth the instructions for increasing an offense level based on the amount of "loss" caused by larceny, embezzlement, or other forms of theft—without expressly defining "loss." Application Note 3(F)(i), however, states that in the case of stolen gift cards, "loss . . . shall be not less than $500." The Riccardi court concluded that "[n]o reasonable person would define the 'loss' from a stolen gift card as an automatic $500," and, therefore, Application Note 3(F)(i)'s "bright-line $500 loss amount cannot be derived from § 2B1.1 by a process reasonably described as interpretation." Riccardi, 989 F.3d at 486–487 (punctuation modified).

Brooks contends that Application Note 2(A) makes a substantive change to § 3B1.3 that exceeds the scope of mere interpretation because it "creates an exception to the general definition of Abuse of Trust, as interpreted by Application Notes 1 and 3." Def. 2d Mem. at 2 (Dkt. 106). Brooks points out that several courts have described Application Note 2(A) as creating an "exception to the requirement of professional or managerial discretion" set forth in Application Note 1. United States v. West, 56 F.3d 216, 220 (D.C. Cir. 1995); see also United States v. Spear, 491 F.3d 1150, 1158–1159 (10th Cir. 2007); United States v. Jankowski, 194 F.3d 878, 884 (8th Cir. 1999); United States v. Reccko, 151 F.3d 29, 33–34 (1st Cir. 1998).

Brooks's argument misses the mark. Whether Application Note 2(A) has force does not depend on whether it expands the definition of terms set forth in Application Notes 1 and 3, which are themselves interpretations of § 3B1.3. What matters is the interplay between Application Note 2(A) and the plain text of § 3B1.3, which does not expressly define what constitutes a position of

4

trust. The Court thus considers whether Application Note 2(A) is non-binding because it either adds to positions that qualify for § 3B1.3's adjustment (as in Havis) or conflicts with the reasonable meaning of § 3B1.3's plain text (as in Riccardi).

Unlike the application note at issue in Havis, Application Note 2(A) does not "add" to the types of positions eligible for abuse-of-trust adjustment. Rather, Application Note 2(A) merely "clarif[ies] that all employees of the United States Postal Service are, by the nature of their employment status, in a per se position of trust as related to the theft or destruction of undelivered United States mail." United States v. Ikechukwu, 492 F.3d 331, 334 (5th Cir. 2007) (emphasis in original).

Further, unlike the application note at issue in Riccardi, Application Note 2(A)'s designation of Postal Service employment as a per se position of trust is a reasonable interpretation of what qualifies as a position of trust. Because § 3B1.3 does not define what constitutes a position of "trust," courts should "give the term its ordinary meaning." Riccardi, 989 F.3d at 486 (punctuation modified). "[D]ictionaries are a good place to start to identify the range of meanings that a reasonable person would understand [the term to have]." Id. (punctuation modified). One dictionary defines "trust" to mean, among other things, "one in which confidence is placed" or a "responsible charge or office."[2] Another defines the term as a "[f]irm belief in the integrity, ability, or character of a person or thing; confidence or reliance."[3] Under either of these meanings, Application Note 2(A)'s designation of Postal Service workers is a reasonable construction of § 3B1.3's text. As the Government argues, "[l]etter carriers undoubtedly occupy a 'position of trust' vis-à-vis the public": "Postal customers send and receive all manner of confidential

---

[2] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/trust (last visited Feb. 25, 2022).

[3] The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=trust (last visited Feb. 25, 2022).

correspondence through the mails"; "[l]etter carriers work alone, with little oversight when they are out on their routes, and are entrusted with safeguarding and delivering the mails honestly"; and "[t]he fact that letter carriers have sole possession and control of so much valuable material on a daily basis requires the public and the postal service to have 'firm belief in the integrity or character' of these postal employees." Gov't Mem. at 5 (quoting the American Heritage Dictionary's definition of "trust").

The Court concludes that Application Note 2(A) merely "helps interpret" what constitutes a position of trust by noting that Postal Service employees are in a per se position of trust. See De Leon, 810 F. App'x at 386 (punctuation modified, citation omitted). Therefore, Application Note 2(A) is binding on this Court. See id.

Even if Application Note 2(A) were not authoritative, the 2-point increase would still apply. As one court explained prior to the Sentencing Commission's adoption of Application Note 2(A), "it is evident that a postal carrier who delivers ordinary mail is in a position of trust":

> Millions drop mail in mailboxes every day trusting that the Postal Service will safely deliver it to the designated destination. The Postal Service places corresponding faith in those it hires to carry and deliver the mail. The Service does not routinely spy or check up on its carriers as they swiftly complete their appointed rounds. The Service does not register every piece of ordinary mail to ensure that it reaches its intended destination. Instead, it trusts carriers to resist the temptation to appropriate the contents of items of mail for themselves. Unlike the bank teller who is dutifully watched over by supervisors and who must account for all transactions at the end of the day, the postal carrier is free from surveillance when delivering mail and does not account in any way for particular pieces of ordinary mail. In sum, a Postal Service employee who delivers ordinary mail is in a quintessential position of trust.

United States v. Ajiboye, 961 F.2d 892, 895 (9th Cir. 1992).

Because Application Note 2(A) is binding, the 2-point increase applies. Alternatively, even if Application Note 2(A) were not binding, as a letter carrier, Brooks occupied a position of trust, and, therefore, the 2-point increase still applies. Either way, the same result is achieved: Brooks's second objection is overruled.

### B. Mitigating Role

Section 3B1.2 instructs that (i) "[i]f the defendant was a minimal participant in any criminal activity," his offense level is decreased by 4 points; (ii) "[i]f the defendant was a minor participant in any criminal activity," his offense level is decreased by 2 points; and (iii) in cases falling between the first two scenarios, the defendant's offense level is decreased by 3 points. There are two reasons why Brooks is not entitled to a § 3B1.2 adjustment.

First, § 3B1.2 applies "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. 3(A) (emphasis added). This means that the relevant comparison is "the defendant's role to that of an average member of the conspiracy, not to that of the leaders." United States v. Guzman-Ramirez, 949 F.3d 1034, 1037 (7th Cir. 2020). However, in arguing that he is entitled to an adjustment under § 3B1.2, Brooks compares his culpability to only that of Taylor, the ringleader. See Def. 1st Mem. at 9. The relevant comparison is Brooks's role to the roles of the other letter carriers, Merriewether and Thomas. The Court agrees with the probation officer's assessment that Brooks's culpability is greater than Merriewether's or Thomas's. While all three individuals supplied stolen mail to Taylor, only Brooks "provided Taylor with a stolen 'arrow key' with directions of where to use it." PSR Addendum at A-2. "It is reasonably foreseeable that [Brooks] . . . knew possession of an arrow key would allow Taylor to steal vast amounts of U.S. mail," thereby making Brooks more culpable than the average participant (i.e., Merriewether and Thomas). Id.

Second, "[i]f a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under [§ 3B1.2] . . . ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense."

7

U.S.S.G. § 3B1.2, cmt. 3(B). Although Application Note 3(B) "applies by its terms only to a defendant who has been convicted of a lesser offense, it stands for the principle that when a defendant's base offense level does not reflect the conduct of the larger conspiracy, he should not receive a mitigating role adjustment simply because he was a minor participant in that broader criminal scheme." United States v. Roberts, 223 F.3d 377, 381 (6th Cir. 2000). The Government represents—and Brooks does not contest—that Brooks was charged with "conspiring to steal mail matter, a five-year felony, as opposed to conspiracy to commit wire fraud, a twenty-year offense." Gov't Mem. at 9. Because Brooks was charged with the former offense and not the latter, he is being held accountable for only the losses associated with his personal conduct, not the net losses caused by all conspiracy members. Id. at 10. As a result, Brooks is facing a lower guidelines range than he would have faced if charge with conspiring to commit wire fraud. Therefore, an adjustment pursuant to § 3B1.2 is unwarranted, and Brooks's third objection is overruled.

### III. CONCLUSION

For the foregoing reasons, the Court overrules Brooks's second and third objections to the PSR.

SO ORDERED.

Dated: March 9, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge